## AS TO DAMAGES FOR DELAY IN DELIVERING FIRE ENGINES TO A MUNICIPALITY.

Circuit Court of Cuyahoga County.

THE CITY OF CLEVELAND v. D. CONNELLY, DOING BUSINESS AS THE CLEVELAND STEAM BOILER WORKS.*

Decided, June 26, 1905.

*Liquidated Damages—For Failure to Deliver Fire Engines to a Municipality—Can Not be Recovered, When—Indefinite Provisions as to Liquidated Damages—Reasonableness of Amount Fixed—. Tests to be Applied as to Amount Claimed on Bond for Faithful Performance—Uncertainty as to whether a Proposition Attached to a Contract Becomes Part of the Instrument.*

1. Where the formal contract, entered into by a municipality with a manufacturing concern for a specified number of fire engines, contains no reference to liquidated damages in case of failure to comply with the terms of the contract within the time fixed, but such a provision was written into the blank presented by the successful bidder, and is so ambiguous that it is impossible from the language employed to say that the parties had any definite intent with reference to damages for delay in delivery, an action will lie on the part of the contractor for recovery of the amount withheld on account of delay in delivery, especially in view of the admitted difficulty in determining accurately what amount of damage would be sustained through delay in a cause of that character.

2. The procurement of indemnity against loss from the threatened enforcement of a claim can not, of itself, be considered an admission, or in the nature of an admission, of liability on such claim.

*Newton D. Baker,* City Solicitor, for plaintiff in error.
*Blandin, Rice & Ginn,* contra.

HENRY, J.; MARVIN, J., and WINCH, J., concur.

Error to the court of common pleas.

The facts in this case are that on the 6th day of August, 1900, the Cleveland Steam Boiler Works, by D. Connelly, proprietor, entered into a contract with the city of Cleveland to furnish

---

* Affirmed without opinion, *Cleveland* v. *Connelly,* 75 Ohio State, 590.

seven steam fire engines, five being of the second size and two
of the third size, for use in the fire department of the city.    The
contract was made pursuant to competitive bidding, the adver-
tisement being authorized by resolution of the council passed in
June, 1900; the advertisement required bids to be tendered not
later than 12 o'clock M., July 12th, 1900, and contained a stipula-
tion that each bid should be accompanied by a certified check
on a solvent bank in the sum of $2,000 as a guarantee, if the bid
were accepted, that a contract would be entered into, that the
performance of the contract would be secured to the satisfaction
of the city, and that, in addition to such guarantee, said check
should be forfeited to the city as liquated damages for any fail-
ure to comply with the terms of the proposal.    By resolution
of the council, of July, 1900, the bid of the Cleveland Steam
Boiler Works was declared the lowest and best bid, and the direc-
tor of fire service was authorized to enter into a contract with that
bidder to furnish the engines.    The bid of D. Connelly was then
attached to certain specifications and writing, and was signed
as a contract.    This contract appears as defendant's Exhibit
"D," the first page of it being the bid of D. Connelly, the re-
mainder being the rest of the contract.    After being duly signed,
the contract was certified to by the city auditor, as is required
by the Burns law, approved by the board of control and the
corporation counsel, and subsequently by the committee on fire,
and on the 20th of August, 1900, received the final approval of
the council and became a valid and binding contract.

The bidding pursuant to the advertisement, was required to
be upon blanks furnished by the board of control, and Connelly's
bid, partly printed and partly written, stipulated that the bidder
proposes to furnish one or more second and third size steam fire
engines, in accordance with specifications and guarantee ac-
companying the proposal, at Fire Station No. 1, within 210 days
after the execution of the contract for the same; that for each
day that the contractor shall fail to deliver said engine or engines,
within the time specified, it is agreed that the contractor shall
pay to the order of the director of fire service of the city, $25
per day as liquidated damages for such failure; and, in the item-
ized specifications as to price for the several sizes of engines,

that deliveries are proposed to be made, two engines in 120 days, two engines in 160 days, two engines in 200 days and one engine in 210 days.

The contract was made on the 6th day of August, 1900, and the engines were not delivered until the 21st day of May, 1901, fifty-one days over and above the 210 days within which the proposal accepted by the council agreed that they should be furnished.   The city of Cleveland thereupon paid the agreed price for the engines, less the sum of $1,275 which it retained as liquidated damages for the delay.   Subsequently the council of the city of Cleveland passed a resolution directing the payment of this $1,275 to D. Connelly. It was not paid and suit was brought.

The questions raised on this state of facts are as follows: 1. Is the proposition made by D. Connelly and physically attached to the contract a part of the contract?   2. If the proposal is a part of the contract, is the provision for $25 per day as liquidated damages a provision for stipulated damages or a penalty?   3. Has the council of the city of Cleveland power by resolution to exonerate the plaintiff from the payment of stipulated damages after default in his contract?

It is evident that if any one of these questions is decided adversely to the city, such decision disposes of the whole case.   The court below held that the proposition made by D. Connelly and physically attached to the contract, was in law no part of the contract.   Passing, however, to the question whether the provision for $25 per day as liquidated damages is to be construed as a provision for stipulated damages, or as in the nature of a mere penalty, as upon a bond given for faithful performance of the contract, the tests applied in such cases are usually these: 1. Is the subject-matter of the contract of such a nature that the actual damages in case of breach will be entirely uncertain and indeterminate?   2. Were damages evidently the subject of calculation and adjustment between the parties at the time the contract was made?   3. Is the stipulation reasonable?   4. What was the intent of the parties?   5. What was the language employed?

Without attempting formally to discuss or apply these tests in their order, we may note some significant facts shown in the

record.    The circumstance that the formal contract, as distinguished from the proposition attached thereto, contains no reference to this subject nor any express reference to the paper which does mention it, is itself an indication that the parties did not have the subject of damages so prominently before their minds when they made their agreement as to make it a matter of deliberate calculation and adjustment.    Moreover, if the attached paper is properly a part of the contract, the reference therein to the subject of damages is contained in the original form or blank furnished to bidders and not in the portion thereof afterwards filled in.    It is a formal provision which does not apply with precision to the plan of installment deliveries which was written into the blank by Connelly when he presented his bid.    It is on that account admittedly ambiguous and uncertain.   Does it mean $25 per day forfeiture for each engine, the delivery of which is delayed?    If so, it is manifestly exorbitant.    The city insists that it has adopted the construction most favorable to Connelly. But, suppose he had been in default as to but one engine; or had made some deliveries punctually and had delayed others only until the day for delivering the last engine.    If provision is made for some delays and not for others, what reason is there for the distinction?    We can not ascertain from the language employed that the parties had any definite intent on the subject.    It is true that damages in a matter of this kind are not easily susceptible of ascertainment, but we can not discover, from the contract or from any evidence in the record, that the parties, in order to meet this difficulty, deliberately set about in advance to estimate and adjust the damage to flow from a breach of this contract, and to stipulate and agree formally upon the rule or measure thereof.    We think, therefore, that the court below was quite right in holding this action to be maintainable.    As there was no attempt to prove actual damages, we do not find it necessary to pass upon any of the other grounds urged as productive of the same result that we have reached on this ground alone.

It is claimed by the city, however, that there was error in the rejection of certain evidence, which it tendered to show that Connelly, by exacting from his sub-contractor a contract similar in this respect to the one in question here, and by claiming there-

under the same rights that the city claims here, has evinced his construction of the contract here to be what the city claims. It is not contended that this evidence of *res inter alios actae* was admissable in order to prevent an unjust result here, but as tending to show how the parties themselves interpreted this contract. We think the evidence was properly excluded. This court has recently held that the procurement of indemnity against loss from the threatened enforcement of a claim can not, of itself, he considered an admission or in the nature of an admission of liability on such claim. The cases are not precisely the same, but a kindred principle applies here. Mutual conduct of parties to a contract may serve to put a particular interpretation upon it. Such, however, is not the case here. We find no error in the record, and the judgment is affirmed.